**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-CV-81009-ROSENBERG/REINHART**

PENSION BENEFIT GUARANTY
CORPORATION,

    Plaintiff,

v.

20 SE 3RD ST LLC, et al.,

    Defendants.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT, GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO
THE AFFIRMATIVE DEFENSES, DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, AND DENYING DEFENDANTS' MOTION IN LIMINE**

    This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment [DE 114], Defendants' Motion for Summary Judgment [DE 112], Plaintiff's Motion for Summary Judgment as to Affirmative Defenses [DE 152], and Defendants' Motion in Limine [DE 116]. The Motions have been fully briefed. For the reasons set forth below, Plaintiff's Motions are granted and Defendants' Motions are denied.

### I.    BACKGROUND AND INTRODUCTION

    This is a case about delay. When a company offers its employees a pension plan, certain federal requirements attach to the plan. One of those requirements is that in the event the company ceases to do business (or dissolves), the company must notify the Pension Benefit Guarantee Corporation—the Plaintiff in this case. Plaintiff is a government-sponsored agency that insures and administers pension plans for companies that have ceased to do business. In

1991, a company offering a pension plan—Liberty Lighting—began the process of liquidating and dissolving. Plaintiff brought this suit on the premise that Liberty Lighting never informed the Plaintiff of Liberty's dissolution. During the 1990s, Liberty Lighting finished its dissolution proceedings and the owner of Liberty Lighting, Mr. Joseph Wortley, went through a personal bankruptcy. During that time, and throughout the early 2000s, pensioners continued to collect pension payments, but the pension funds dwindled. Finally, in 2012, Plaintiff became aware of Liberty Lighting's dissolution in the 1990s. By the time Plaintiff learned of Liberty's dissolution, however, the funds in the pension were completely depleted. The Defendants before the Court are a collection of companies that Mr. Wortley owned when the pension plan terminated in 2012.

The delay in this case is extreme. Twenty-one years passed from the time Liberty Lighting began to dissolve to the time its pension fund was depleted. Although it is unclear whether Liberty Lighting notified Plaintiff of its dissolution, someone must bear the cost of the delay of Plaintiff's takeover of the pension. If Defendants prevail, the costs associated with the delayed wind-up of the Liberty pension will be borne by active companies in the marketplace that pay pension insurance premiums to Plaintiff. If Plaintiff prevails, the costs associated with the delayed wind-up will be borne by non-parties who had very little, if any, connection to Liberty Lighting, as well as Mr. Wortley who, from his perspective, attempted to put Liberty Lighting behind him via bankruptcy many years ago. In all candor to the parties, the Court has found this to be a difficult case. The Court does not believe that a delay of twenty-one years was contemplated when the applicable federal laws were enacted. Nonetheless, the Court

2

ultimately concludes that federal law compels it to enter summary judgment in favor of the Plaintiff.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

## III.   FACTS

In 1989, Liberty Lighting Company, Inc. became the sponsor and administrator of a pension plan. DE 115 at 1. That plan was subject to federal law and federal regulations: The Employee Retirement Income Security Act ("ERISA"). At some point between 1989 and 1991,

Liberty Lighting experienced business problems significant enough to force it into bankruptcy. DE 113 at 2. After bankruptcy, Liberty Lighting was administratively dissolved by the State of Illinois in 1992. *Id.*

ERISA requires companies that maintain pensions to notify the Plaintiff if a pension plan is at risk for termination because Plaintiff administers pension plans for companies that have ceased to do business. *See* 29 U.S.C. § 1302(a). A plan is at risk for termination if the company administering the plan enters bankruptcy or dissolves. *Id.* Although Liberty Lighting became bankrupt and dissolved, the parties dispute whether Liberty Lighting ever notified Plaintiff of the same. For its part, Plaintiff contends that Liberty Lighting never sent the required notice. DE 134-9. For their part, Defendants contend that "nobody . . . knows if this is actually true; too much time has passed." DE 113 at 3. In any event, it is undisputed that Liberty Lighting did not terminate its pension plan liability pursuant to ERISA or otherwise resolve its obligation to pass the administration of the plan to Plaintiff. Instead, time passed.

In 1993, the sole owner of Liberty Lighting, Mr. Wortley, filed for personal bankruptcy. DE 113 at 3. Mr. Wortley's assets (which were surrendered to the bankruptcy court) included Mr. Wortley's Liberty Lighting stock. *Id.* The bankruptcy court issued its final decree in 1998. *Id.* Mr. Wortley's Liberty Lighting stock was not sold during the bankruptcy and was instead "fully administered" property. DE 115 at 5.

During Mr. Wortley's bankruptcy and in the years that followed, various pension plan documents were executed by Liberty Lighting and Mr. Wortley. In 1994, Mr. Wortley executed

4

an amendment to the plan on behalf of Liberty Lighting. *Id.* at 2.[1] In 2002, Mr. Wortley filed a Department of Labor pension plan benefit form on behalf of Liberty Lighting. *Id.* at 2-3. In 2003, Mr. Wortley sent a letter on Liberty Lighting letterhead to a consulting organization regarding the benefits of the pension plan. *Id.* In 2004, Liberty Lighting entered into an Investment Management Agreement with a bank to manage the assets of the pension plan. *Id.* at 3. That agreement was signed by Mr. Wortley. *Id.*

In 2012, the pension plan ran out of money and the bank administering the pension payments informed Plaintiff of the same. *See* DE 134-2; 134-9. After communications and negotiations between Plaintiff and Mr. Wortley, Liberty Lighting's pension plan was terminated and Plaintiff took over the administration of pension benefits. DE 115 at 3-4. The date of termination, an important date, was July 31, 2012. *Id.*

Plaintiff subsequently filed the suit before this Court. Plaintiff did not file suit against Liberty Lighting, a long-dissolved entity with no assets. Instead, Plaintiff filed suit against Mr. Wortley and against various companies in which Mr. Wortley held an ownership interest on the date of plan termination, July 31, 2012. Defendants filed a motion to dismiss, and the Court referred the motion to the Honorable Magistrate Judge Bruce E. Reinhart for a Report and Recommendation. Defendants argued that Liberty Lighting could not be responsible for the pension plan in 2012 because of its earlier dissolution. In his Report, Judge Reinhart disagreed. Judge Reinhart concluded that ERISA was silent on the impact of corporate dissolution, that it was the responsibility of the federal courts to create common law on issues where ERISA was

---

1 Although Defendants dispute the effective date of the amendment, Defendants do not dispute the date upon which the amendment was executed. DE 138 at 2.

silent, and that the appropriate common law, consistent with the purposes of ERISA, was that Liberty Lighting's dissolution did *not* have the effect of removing Liberty Lighting from its status as the sponsor of an ERISA-governed pension plan. DE 86. This Court agreed and adopted Judge Reinhart's recommendation over Defendants' objections. DE 120. The parties subsequently briefed the cross motions for summary judgment before the Court, again arguing the legal significance of Liberty Lighting's dissolution. The issue is ripe for the Court's decision.

## IV. LEGAL ANALYSIS AND DISCUSSION

Plaintiff has moved for partial summary judgment, arguing that it is entitled to judgment as a matter of law against some of the Defendants in this case.[2] Plaintiff's position is that ERISA imposes pension plan termination liability on the Defendant companies owned by Mr. Wortley on the day the pension plan was terminated in 2012. Defendants filed a cross motion for summary judgment, arguing that the same companies cannot be held liable as a matter of law.

When a pension plan is terminated, ERISA imposes liability on certain parties pursuant to 29 U.S.C. § 1362. The date ERISA utilizes to impose liability is the date of plan termination (here July 31, 2012),[3] and the parties that are subject to liability are **the contributing sponsor of the plan** or **a member of a contributing sponsor's controlled group**:

---

2 The Defendants that are the subject of Plaintiff's Motion for Partial Summary Judgment are: Liberty Analytical Corp.; Bedford Materials Co., Inc.; Liberty Properties at Carey, LLC; Liberty Properties at Bedford, LLC; Buffalo Power Electronics Center, Inc.; Liberty Polyglas, Inc.; Liberty Associates, LC; 50509 Marine, LLC; AMH Government Services, LLC; American Marine Holdings, LLC; Baja Marine, Inc.; Donzi Marine, LLC; Fountain Dealers Factory Super Store, Inc.; Fountain Powerboat Industries, Inc.; Fountain Powerboats, LLC; Liberty Acquisition FPB, LLC; Palmetto Park Financial, LLC; Pro-Line Boats, LLC; and Pro-Line of North Carolina, Inc.
3 The day before the date of termination is used in some calculations. 29 C.F.R. § 4007.13(g).

> In any case in which a single-employer plan is terminated in a distress termination under section 1341(c) of this title or a termination otherwise instituted by the corporation under section 1342 of this title, any person who is, on the termination date, a contributing sponsor of the plan or a member of such a contributing sponsor's controlled group shall incur liability under this section. The liability under this section of all such persons shall be joint and several.

§ 1362(a). It is undisputed that the contributing sponsor of the pension plan in this case was historically Liberty Lighting Company, Inc. DE 115 at 1. Liberty Lighting became the contributing sponsor as early as 1989. *Id.* What the parties dispute is: (**A**) whether Liberty Lighting could be considered the contributing sponsor as of the date of plan termination in 2012 and (**B**) the application of ERISA liability to "member[s] of [the] contributing sponsor's controlled group." Each dispute is considered in turn before the court turns to (**C**) Defendants' affirmative defenses and motion in limine.

### A. <u>Liberty Lighting's Role as the Pension Plan's Contributing Sponsor</u>

There is no reasonable inference from the record evidence that any entity or person other than Liberty Lighting was ever the pension plan's contributing sponsor. Defendants admit that Liberty Lighting was the contributing sponsor in 1989. DE 138 at 2. There is no record evidence that Liberty Lighting ever transferred its responsibilities under the plan to some other entity or person, was otherwise relieved of its responsibilities, or somehow ceased to be the contributing sponsor. Instead, record evidence confirms Liberty Lighting's continuing role as the contributing sponsor. For example, Liberty Lighting executed documents in connection with the plan in 1994, 2002, 2003, 2004, and 2012. DE 11 at 2-4.

Defendants argue that Liberty Lighting's dissolution under state law had the effect of removing Liberty Lighting from the ambit of contributing sponsor liability under ERISA. It is undisputed that in 1992 Liberty Lighting was dissolved under Illinois law. DE 113 at 3.

7

Defendants cite to no ERISA provision, federal law, or federal case for the proposition that a contributing sponsor can cease to be a contributing sponsor by operation of *state* law. And while it is true that federal law defers to the law of the state of incorporation to assess matters of corporate existence,[4] Plaintiff does not seek any relief against Liberty Lighting. Liberty Lighting is not a Defendant in this case—Plaintiff does not seek final judgment against the company due to its status as the ERISA contributing sponsor. For these reasons, the Court concludes that (1) under the clear and unambiguous terms of ERISA Liberty Lighting was the contributing sponsor of the plan as of the date of plan termination in 2012 and (2) Defendants have provided no relevant legal authority to the contrary. Plaintiff's Motion for Partial Summary Judgment is therefore granted on this basis.

In the alternative, ERISA is silent on the issue of whether dissolution under state law can affect an entity's status as a contributing sponsor. As this Court concluded at the motion to dismiss stage, however, "the federal courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Arnold v. Life Ins. Co. of N. Am.*, 894 F.2d 1566, 1567 (11th Cir. 1990) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 89 U.S. 101, 110 (1989)). In deciding whether to adopt a federal common law rule, a court "must examine whether the rule, if adopted, would further ERISA's scheme and goals." *Horton v. Reliance Standard life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir. 1998). Here, ERISA's central goal is the protection of the interests of pension beneficiaries. *Id.* Applying these principles, this Court previously ruled "that the dissolution of Liberty Lighting under state law did not terminate Liberty Lighting's status under ERISA as a contributing sponsor of the Plan, nor did it relieve

---

4 *E.g., Chicago Title & Tr. Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp.*, 302 U.S. 120, 124-25 (1937).

Liberty Lighting of the obligations attendant to being a contributing sponsor." DE 86 at 14; DE 120. Upon review of the summary judgment record, the Court can see no reason to alter its position.[5]

Also in the alternative, the Court concludes that Illinois law does not bar this Court from finding that Liberty Lighting was the plan's contributing sponsor in 2012. Illinois dissolution law permits a dissolved company to carry on in a manner necessary to wind up its affairs and, pursuant to Liberty Lighting's termination of the plan in 2012, Liberty Lighting still had ERISA-based affairs that needed to be wound up in 2012. *See* 805 Ill. Comp. Stat. 5/12.30. Indeed, Mr. Wortley's execution of pension documents over the course of many years after Liberty Lighting's dissolution exemplifies the on-going need for Liberty Lighting to wind up its pension obligations. Somebody had to administer the pension, and there was no one else to do so. These alternative bases support granting Plaintiff's Motion for Partial Summary Judgment on the issue that Liberty Lighting could be considered the contributing sponsor as of the date of plan termination in 2012.

The Court's decision may be more difficult if Plaintiff had sought relief against Liberty Lighting as an entity. Liberty Lighting ceased to exist under state law and federal law respects the rights of states to define corporate existence. But here, the Court's decision is a narrow one. The Court holds only that for the purposes of a federal, ERISA-focused application of ERISA defined terms (such as a contributing sponsor), a state-law based dissolution does not disturb an entity's federal, ERISA contributing-sponsor designation. To hold otherwise would permit

---

5 The Court adopts and incorporates herein the analysis and reasoning of Judge Reinhart that was adopted by this Court.

contributing sponsors to circumvent the requirements of ERISA. ERISA provides for the orderly termination of a contributing sponsor's liability, but if state law dissolution also terminated a sponsor's ERISA liability an entity could dissolve, not notify Plaintiff of the dissolution, and thereby avoid all ERISA-based liability. That is exactly what is alleged to have happened in this case.

Defendants' position also cannot be squared with ERISA as a whole. The ramification of Defendants' position is that *nobody* was responsible for the pension plan; not Liberty Lighting, because it dissolved; not Mr. Wortley, because he went through bankruptcy; and not Plaintiff, because it never took control of the plan.[6] But ERISA does not allow pension plans to exist in a state of limbo, devoid of any caretaker. A plan trustee's obligations are extinguished only when he or she resigns in accordance with the applicable plan provisions *and* makes arrangements—e.g., through the appointment of a successor—for the continued management of the plan. *Chambers v. Kaleidoscope, Inc. Profit Sharing Plan & Trust*, 650 F. Supp. 359, 369 (N.D. Ga. 1986); *Pension Benefit Guaranty Corp. v. Greene*, 570 F. Supp. 1483 (W.D. Pa. 1983); *Freund v. Marshall & Ilsley Bank*, 485 F. Supp. 629 (W.D. Wis. 1979). For all of the reasons set forth above, Liberty Lighting was the contributing sponsor of the pension plan on the date of plan termination, and Plaintiff's Motion for Partial Summary Judgment is granted on this basis.

---

6 Even if Liberty Lighting did send Plaintiff notice of its dissolution and the notice was somehow lost in transit, Liberty Lighting would still have had the burden to follow-up with Plaintiff to ensure that the plan was properly cared for.

*The Bankruptcy of Liberty Lighting's Sole Owner*

The Court addresses one other argument brought by Defendants that is not tied directly to Liberty Lighting. Defendants argue that the owner of Liberty Lighting's personal bankruptcy (Mr. Wortley) resulted in the stock of Liberty Lighting no longer being owned by Mr. Wortley in 1997. Thus, Defendants argue, there could be no ownership of Liberty Lighting, by Mr. Wortley, in 2012. That argument is without merit. Mr. Wortley's stock was officially abandoned by the bankruptcy trustee. DE 134 at 3; 115-16 at 4. Accordingly, the Liberty Lighting stock was returned to Mr. Wortley upon the conclusion of his bankruptcy. *See* 11 U.S.C. § 554; *In re Wright*, 566 B.R. 457, 462 (6th Cir. BAP 2017) ("The plain language of the statute unambiguously states that if an asset was property scheduled [as in the instant case] and not administered by the trustee [as in the instant case], upon closing the case, the asset is abandoned as a matter of law.").

Relatedly, Defendants contend that the stock was "destroyed" prior to the stock's post-bankruptcy return to Mr. Wortley under Illinois law, but for this proposition Defendants rely upon a single case: *Shute v. Chambers*, 142 Ill. App. 3d 948, 953 (1986). *Shute*, however, simply alludes to the general proposition (citing a source from 1938) that after dissolution an entity will no longer possess assets—its assets will be distributed to creditors or stockholders.[7] Thus, the Court can see no basis to conclude that the stock was somehow "destroyed" and, as a result, was not returned to Mr. Wortley at the conclusion of his bankruptcy.

---

7 *Shute* acknowledges that a dissolved corporation will continue to exist to wind-up its affairs. *Id. Shute* also arguably supports Plaintiff's position—not Defendants'; in *Shute*, the court permitted the suit to proceed over the defendant's dissolution defense, much like the instant case. *Id.* at 953-54. As in *Shute*, the instant case is not against the corporation that was dissolved.

11

## B. The ERISA Liability of the "Controlled Group"

The second main area of dispute between the parties is whether ERISA-based liability should attach to the Defendants under the "controlled group" provision. ERISA imposes pension plan termination liability not only upon the contributing sponsor of a plan, but also upon "member[s] of [the] contributing sponsor's controlled group" as of the date of plan termination. 29 U.S.C. § 1362. The controlled group is a defined term which means: "in connection with any person, a group consisting of such person and all other persons under common control with such person." § 1301(a)(14)(A). Common control is also a defined term, but the definition of common control is relegated to Treasury Regulations. § 1301(a)(14)(B). Treasury Regulations in turn define different instances of common control. One such definition relevant to this case is that corporations are under common control if they are under common ownership. 29 C.F.R. § 4001.3(b)(2); 26 C.F.R. § 1.414(b)-1; 26 C.F.R. § 1.414(c). A second definition relevant to this case is that entities are under common control if they are under common ownership and are also "trades or businesses." 26 C.F.R. § 1.414(c)-1.[8] These regulations set the threshold for common ownership at no less than 80%. The undisputed owner of Liberty Lighting was at all times Mr. Wortley.[9] The Court therefore examines the record

---

8 A contributing sponsor is automatically a part of the "controlled group" and thus, need not necessarily be a trade or business. 29 U.S.C. § 1301(a)(13)-(14) (stating that a controlled group means, in connection with any **contributing sponsor**, a group consisting of the contributing sponsor and all other persons under common control with the contributing sponsor).

9 Defendants admit that Mr. Wortley was the sole owner of Liberty Lighting prior to the company's bankruptcy, and Mr. Wortley disclosed in bankruptcy that he was the 100% owner of Liberty Lighting. As previously discussed, Defendants' contestation of the ownership issue is limited to the proposition that the dissolution of Liberty Lighting and the bankruptcy of Mr. Wortley had the effect of removing Mr. Wortley and Liberty Lighting from the ambit of ERISA liability. The Court has rejected both of those arguments. To be sure, Mr. Wortley's Liberty Lighting stock in 2012 would have been valueless, the company would have had no assets, and Liberty Lighting would have been unable, under Illinois law, to conduct any business (or to be sued), but under Illinois law a dissolved company may take any necessary action to wind-up its affairs. *See* 805 Ill. Comp. Stat. 5/12.30.

evidence of the Defendants in this case to determine whether those Defendants were under common ownership with Mr. Wortley at the time of plan termination.

*Liberty Analytical Corporation*

Defendants have admitted that Liberty Analytical was an operating business on the date of plan termination, that it was a trade or business, and that it was entirely owned by Mr. Wortley. DE 138 at 4. Thus, Defendant Liberty Analytical was a member of the plan's contributing sponsor control group on the date of plan termination, and Plaintiff is entitled to partial summary judgment as to this Defendant.

*Bedford Materials Company, Inc.*

Defendants have admitted that Bedford Materials was an operating business on the date of plan termination, that it was a trade or business, and that it was at least 82% owned by Mr. Wortley. *Id.* Thus, Defendant Bedford Materials was a member of the plan's contributing sponsor control group on the date of plan termination, and Plaintiff is entitled to partial summary judgment as to this Defendant.

*Liberty Properties at Carey and Liberty Properties at Bedford*

Defendants have admitted that both of the aforementioned companies are entirely owned by Mr. Wortley and that, as of the date of plan termination, each of the companies owned real property occupied by another member of the controlled group. *Id.* at 6-7. Courts have unanimously held that the leasing of property to a person under common control is a "trade or business."[10] Thus, both of the Liberty Property Defendants were members of the plan's

---

10 *E.g., Pension Benefit Guaranty Corp. v. Findlay*, 902 F.3d 597, 607 (6th Cir. 2018); *Cent. States Se. & Sw. Areas Pension Fund v. Messina Prods., LLC*, 706 F.3d 874, 882 (7th Cir. 2013).

contributing sponsor control group on the date of plan termination, and Plaintiff is entitled to partial summary judgment as to both Defendants.

### *Buffalo Power Electronics Center, Inc.*

Defendants have admitted that Buffalo Power was an operating business on the date of plan termination, that it was a trade or business, and that it was entirely owned by Mr. Wortley. *Id.* at 7-8. Thus, Defendant Buffalo Power was a member of the plan's contributing sponsor control group on the date of plan termination, and Plaintiff is entitled to partial summary judgment as to this Defendant.

### *Liberty Polyglas, Inc.*

Defendants have admitted that Liberty Polyglas was an operating business on the date of plan termination, that it was a trade or business, and that it was at owned by Mr. Wortley through marriage. *Id.* Thus, Defendant Liberty Polyglas was a member of the plan's contributing sponsor control group on the date of plan termination, and Plaintiff is entitled to partial summary judgment as to this Defendant.

### *Liberty Associates, LC*

Defendants have admitted that Liberty Associates was an operating business on the date of plan termination, that it was a trade or business, and that it was entirely owned by Mr. Wortley. *Id.* at 8-9. Thus, Defendant Liberty Associates was a member of the plan's contributing sponsor control group on the date of plan termination, and Plaintiff is entitled to partial summary judgment as to this Defendant.

*The Marine Companies*

Defendants have admitted that a large list of companies in the maritime business (see docket entry 115 at page 9, the "Marine Companies") were operating businesses on the date of plan termination, that they were trades or businesses, and that they were entirely owned by Mr. Wortley. *Id.* Thus, the Marine Companies were members of the plan's contributing sponsor control group on the date of plan termination, and Plaintiff is entitled to partial summary judgment as to these Defendants.

*Defendants' Policy-Based Argument in Defense of the Controlled Group Defendants*

Defendants argue that it is unfair to hold parties liable in 2012 for events that occurred in the early 1990s—parties who had no connection to Liberty Lighting. In response, the Court discusses three points.

First, ERISA affixes the date of liability to the date of termination. Liberty Lighting and Mr. Wortley could have pursued termination of the plan in the 1990s, but neither one chose to do so, regardless of whether or not Liberty Lighting provided Plaintiff notice of Liberty's dissolution. Had Liberty Lighting taken the steps necessary to terminate the plan in parallel with state dissolution proceedings, its ERISA-based liability could have been resolved far, far earlier than 2012.

Second, ERISA affixes liability for common ownership at 80%. While other parties may be adversely affected in the present through their close affiliation with Mr. Wortley, the same could be said of any pension plan termination when a party is in a close partnership with an ERISA contributing-sponsor owner. In the abstract, events could have transpired differently in this case in a manner adverse to Plaintiff. Theoretically, Plaintiff's collectable recovery in

15

2012 could have been *less* than Plaintiff's collectable recovery in 1991 or 1992. In that situation, it may well have been Plaintiff's plea to the Court that it was unfair to limit its recovery to a controlled group in 2012.

Third and finally, ERISA imposes liability on controlled group members (even if it impacts minority-owner third parties) for a good reason. Controlled group liability ensures that employers "keep up their end of the deal" by preventing them from fractionalizing their assets and isolating them from the Plaintiff's reach. *Pension Benefit Guaranty Corp. v. Findlay Indus., Inc.*, 902 F.3d 597, 610 (6th Cir. 2018). Indeed, ensuring that employers keep up their end of the deal is one of the core purposes of ERISA. *Id.*

In any event, ERISA is clear on these issues. ERISA chose the date to affix liability and ERISA chose the ownership threshold necessary to impact third parties. Defendants' policy-based arguments, therefore, are tantamount to an argument against the plain terms of ERISA itself.

### C. Defendants' Affirmative Defenses and Motion in Limine

In Plaintiff's Motion for Partial Summary Judgment, Plaintiff did not address Defendants' affirmative defenses. Although Plaintiff did eventually address the defenses in its Reply, the Court concluded that such matters were better addressed through a motion, response, and reply. Accordingly, the Court permitted Plaintiff to file an additional motion for summary judgment specific to Defendants' affirmative defenses. Upon review of that motion, the Court concludes that the motion is granted.

Defendants assert a statute of limitations affirmative defense, but Defendants do not specify which sovereign's affirmative defense it intends to raise. If Defendants intended to

16

reference Illinois law,[11] Plaintiff has not brought a claim under Illinois law, nor has Plaintiff sued Liberty Lighting, an Illinois corporation. If Defendants intended to reference federal law, the statute of limitations for ERISA actions is six years and Plaintiff brought its action within six years. *See* 28 U.S.C. § 4003(e)(6); *Pension Benefit Guaranty Corp. v. Don's Trucking Co.*, 308 F. Supp. 2d 680, 682 (E.D. Va. 2003) (holding that pension termination liability accrues on the date of plan termination).

Defendants assert a "no duty to notify" affirmative defense, contending that the summary judgment Defendants had no duty to notify Plaintiff of Liberty Lighting's dissolution. That is irrelevant. Defendants' failure to notify Plaintiff is not an element of Plaintiff's claims or any defense thereto.

Defendants assert a "waiver" affirmative defense, but Defendants have premised that defense on the proposition that Plaintiff's suit was untimely. DE 136 at 16. That is incorrect. Plaintiff's suit was timely. Accordingly, this affirmative defense is also irrelevant.

Defendants filed a motion in limine, contending that the follow categories of evidence are irrelevant and should not be admitted at trial: (1) facts surrounding Liberty Lighting's dissolution and duty to notify Plaintiff of the same, (2) facts surrounding Liberty Lighting's bankruptcy, (3) facts pertaining to Mr. Wortley's execution of documents on Liberty Lighting's behalf and on behalf of the company pension, and (4) various other facts pertaining to the parties' dealings. Many of these facts were relevant enough to be referenced in this Order, and the remaining facts have at least enough potential relevance that the Court should address objections to the same at trial. *See Garcia v. Scottsdale Ins. Co.*, No. 18-20509, 2019 WL

---

11 Defendants' argument in its papers relies upon Illinois law.

1491872, at *1 (S.D. Fla. Apr. 4, 2019) (noting that motions in limine are disfavored and questions of admissibility should generally be dealt with at trial).

For the foregoing reasons, Defendants' Motion in Limine is denied and Plaintiff's Motion for Summary Judgment as to Defendants' Affirmative Defenses is granted.

## V. CONCLUSION

For the foregoing reasons, Plaintiff is entitled to partial summary judgment against each of the Defendants referenced in footnote 2 of this Order. Nonetheless, Plaintiff's Motion is a Motion for Partial Summary Judgement and, as a result, the Court will not enter final judgment as to any Defendant (as requested by Plaintiff) at this time. It is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment [DE 114] is **GRANTED**. Defendants' cross Motion for Summary Judgment [DE 112] is **DENIED** for the same reasons Plaintiff's Motion is granted. Plaintiff's Motion for Summary Judgment on Defendants' Affirmative Defenses [DE 152] is **GRANTED**. Defendants' Motion in Limine [DE 116] is **DENIED WITHOUT PREJUDICE** for the objections to be re-raised, if necessary, at trial. The parties are **ORDERED** to file a notice informing the Court of the remaining issues in this case within three business days of the date of rendition of this Order.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 22nd day of November, 2019.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record